**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NORMAN HARVEY,            :     Civil No. 3:18-cv-1813
                        :

        Plaintiff         :     (Judge Mariani)
                        :

    v.                :
                        :

LAUREL HARRY, *et al.*,       :
                        :

        Defendants     :

**<u>MEMORANDUM</u>**

## I.    <u>Background</u>

Plaintiff, Norman Harvey, an inmate currently confined in the State Correctional

Institution, Dallas ("SCI-Dallas"), Pennsylvania, originally initiated this action pursuant to 42

U.S.C. § 1983, in the Court of Common Pleas of Cumberland County, Pennsylvania.   (Doc.

1).   By Notice of Removal dated September 13, 2018, the case was removed to the United

States District Court for the Middle District of Pennsylvania.   (*Id*.).   The named Defendants

are the Pennsylvania Department of Corrections ("DOC") and the following DOC and SCI-

Camp Hill employees:   Superintendent Laurel Harry; Deputy Superintendent Kathleen

Zwierzyna; Chief Hearing Officer Dorina Varner; Grievance Officer Keri Moore; Inmate

Accounts Manager Doris Weaver; Superintendent's Assistant and Grievance Coordinator

Tonya Heist; Unit Manager Renee Zobitnee and Food Service Manager Michael Enck.   *Id*.

Plaintiff sues the named Defendants in both their official and individual capacities.   *Id*.   He

seeks compensatory and punitive damages for alleged Eighth Amendment claims regarding

his health, and his conditions of confinement, as well as a Fourteenth Amendment claim

regarding monies impermissibly removed from his innate account, while temporarily housed at SCI-Camp Hill.  *Id.*

By Memorandum and Order dated February 11, 2020, the Court granted summary judgment in favor of the Pennsylvania Department of Corrections.  (Docs. 14, 15).

On April 13, 2020, the remaining Defendants filed an answer.  (Doc. 19).

On November 16, 2020, remaining Defendants filed a motion for summary judgment, along with a supporting statement of material facts and brief.  (Docs. 20-22).  By Order dated June 21, 2021, the Court directed Plaintiff to file a brief in opposition to Defendants' motion for summary judgment on or before July 7, 2021.  (Doc. 23).  The Court further ordered that Plaintiff's failure to timely file a brief in opposition to Defendants' motion for summary judgment would result in Defendants' motion being granted as unopposed.  *Id.* To date, Plaintiff has neither filed a brief in opposition, nor requested an enlargement of time within which to do so.

For the reasons set forth below, the Court will grant Defendants' motion for summary judgment as unopposed.

## II.    Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact."  FED. R. CIV. P. 56(a).  "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).   Once such a showing has been made, the non-moving party must offer specific

facts contradicting those averred by the movant to establish a genuine issue of material fact.

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).   Therefore, the non-moving party

may not oppose summary judgment simply on the basis of the pleadings, or on conclusory

statements that a factual issue exists.   *Anderson*, 477 U.S. at 248.   "A party asserting that

a fact cannot be or is genuinely disputed must support the assertion by citing to particular

parts of materials in the record . . . or showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact."   FED. R. CIV. P. 56(c)(1)(A)-(B).   In evaluating

whether summary judgment should be granted, "[t]he court need consider only the cited

materials, but it may consider other materials in the record."   FED. R. CIV. P. 56(c)(3).

"Inferences should be drawn in the light most favorable to the non-moving party, and where

the non-moving party's evidence contradicts the movant's, then the non-movant's must be

taken as true."   *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d

Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

3

only if there is a 'genuine' dispute as to those facts."   *Scott v. Harris*, 550 U.S. 372, 380,

127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).   If a party has carried its burden under

the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts.   Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.   The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact.   When opposing parties tell two different stories, one of which
> is blatantly contradicted by the record, so that no reasonable jury could
> believe it, a court should not adopt that version of the facts for purposes of
> ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   *Statement of* Undisputed Facts

An inmate may be fed a special, "therapeutic" diet that breaks from the traditional

Department of Corrections' menu.   (Doc. 21-2 at 2, Declaration of Anne Brown, DOC

Clinical Dietitian).   A non-standard diet may be ordered by a medical provider at the

Department's facilities upon assessment of an inmate.   *Id.*   One such condition is G6PD

Chromosome Deficiency.   *Id*.   The only clinical evidence available shows that an individual

with G6PD Chromosome Deficiency should avoid fava beans.   *Id*.   The Department of

Corrections does not serve fava beans.   *Id*.

On July 28, 2016, while an inmate at SCI-Graterford, Plaintiff was diagnosed with a

4

G6PD chromosome deficiency and a Therapeutic Diet Order Form was issued, stating

Plaintiff was entitled to "Other Non-Standard Diet – G6PD Diet."   (Doc. 21-1 at 9).   On

September 29, 2016, Plaintiff's request for a Therapeutic Diet was denied by SCI-Dallas,

stating "no diet needed, only food to be avoided is Fava beans which are not served on

DOC menu."   (Doc. 21-1 at 8).

Plaintiff, Norman Harvey, was housed at SCI-Camp Hill from August 19, 2016

through September 28, 2016.   (Doc. 21-1 at 5, Inmate Query – Cell History).

On September 11, 2016, Plaintiff filed Grievance No. 643238, challenging a medical

deduction from his account and medical treatment.   (Doc. 1-2 at 28, Initial Review

Response).

By Response dated September 15, 2016, Plaintiff's grievance as denied as follows:

I am in receipt of your grievance.   In your grievance you state you paid a $5
co-pay to Medical staff on 8/31/16.   You state you were seen on 9/1/16.
You state you were told lab work would be ordered for you because of your
dizziness, headaches, and nausea.   You state you have not received the lab
work yet and you are still symptomatic.

In response to your grievance, you were assessed a co-pay for a non chronic
condition.   The non chronic condition was acute Sinusitis.   You were
charged $5 for the visit.   This co-pay stands.   Your lab work was ordered, it
was ordered for three-six months from the order date.   This lab work will be
drawn when it is due.   Per documentation, this was all explained to you on
your last sick line visit.

This grievance and any requested relief is denied.

*Id.*   The record reveals no further appeal from this denial.

On September 19, 2016, Plaintiff filed Grievance No. 644697 regarding not receiving

a therapeutic diet and requesting that his therapeutic diet approved at SCI-Graterford be

upheld.   (Doc. 1-2 at 26, Official Inmate Grievance).

On October 14, 2016, Plaintiff's Grievance No. 644697 was denied as follows:

> In your grievance you state, the meals you receive are forbidden according to
> your diet.   However, we have no record of any kind of special diet for you.
> You should sign-up for sick call line and seek advice from the Medical
> department if you feel you need a special diet.   Since we have no record of a
> special diet, I find this grievance and any requested relief to be denied.

(Doc. 1-2 at 26, Initial Review Response).   On appeal, the Facility Manager upheld the

findings of the Grievance Officer, finding the following:

> I am in receipt of your appeal and have reviewed your original grievance as
> well as the Grievance Officer's response.   In your appeal you state your
> grievance was denied stating there was no record of you having a special
> diet.   You claim you received a pink card from Medical.   You also state "it
> should have been in my records from Graterford."   You state you are still in
> possession of the special diet card from Graterford.
>
> I find the Grievance Officer properly investigated your grievance concerns
> and provided an appropriate response.   As stated by the Grievance Officer,
> Culinary has no record of you being on a special diet.   If Medical gave you a
> pink card, they did so in error.   All special diets must be approved through
> Central Office begore they are official and can begin.   There was no record
> of you being approved for a special diet on the date your grievance was filed.
>
> Therefore, I uphold the initial response and your appeal, and any requested
> relief is denied.

(Doc. 1-2 at 27, Facility Manager's Appeal Response).   Plaintiff's appeal to final review before the Secretary's Office of inmate Grievances & Appeals was dismissed on January 6, 2017 for Plaintiff's failure to comply with the Secretary's December 16, 2016 Action Required notice, requiring him to submit a legible copy of his initial grievance, the initial review response, and a legible copy of his appeal to the Facility Manager.   (Doc. 1-2 at 27, 29).

On September 26, 2016, Plaintiff filed Grievance No. 645353, claiming that "A Block has no ladders, is filthy, infested with bugs, roaches, spiders & mice" and has no room to sit."   (Doc. 1-2 at 23, Official Inmate Grievance).

On October 6, 2016, Plaintiff's Grievance No. 645353 was denied as follows:

I have investigated the issues you raised in your grievance, in which you claim A-Block is infested with bugs and rodents; you have no ladder to reach the top bunk; you have nowhere to eat your meal and you believe you are still in quarantine.   The relief you are seeking is to be monetarily compensated for "cruelty and inconvenience."

The Group One housing units have roaches, spiders and mice that come into the block to seek shelter and food due to the communal living conditions. This cannot be helped, but we attempt to control it with monthly visits from the exterminator who sprays in the blocks for insects and arachnids and sets traps for mice.

Concerning your seating situation during mealtime, it would only be rational that if you sleep on the top bunk, you should be able to sit at the desk and eat. This is something you should have worked out with your former cellmate.

When you left R-Block, you were no longer in quarantine.   Being in A-Block

for approximately one month is a much shorter timeframe than most inmate
have.   A-Block is not considered quarantine.

Inmates have been getting into the top bunks of the housing units for decades
without incident.   If you were unable to do so, the Medical Department should
have put a housing restriction on you.

Also, the blocks and their cells have consistently passed national
accreditation standards and quarterly inspections from the Regional Deputy
Secretary.

Your grievance is therefore denied.   You will not be compensated monetarily
for "cruelty and inconvenience."

(Doc. 1-2 at 23, Initial Review Response).   Plaintiff appealed the Initial Review Response to

the Facility Manager, who upheld the grievance response based on the following:

I find the Grievance Officer properly investigated your grievance concerns
and provided an appropriate response.   As stated by the Grievance Officer,
you should have worked out eating arrangements with your cell mate.   Since
you slept on the top bunk, you should have used the desk to eat at as he had
his bunk to sit on.   There is no documented medical reason for you not to be
able to climb up and down the top bunk.   Had you been unable, Medical
would have put a housing restriction on you.   As to the exterminator, we have
an ongoing contract with the exterminator, and he has treated all housing
units on a routine basis.

Therefore, I uphold the initial response and your appeal and any request for
relief is denied.

(Doc. 1-2 at 24, Facility Manager's Appeal Response).   Plaintiff's appeal to final review

before the Secretary's Office of inmate Grievances & Appeals was dismissed on January 6,

2017 for Plaintiff's failure to comply with the Secretary's December 16, 2016 Action

Required notice, requiring him to submit a legible copy of his initial grievance, the initial

review response, and a legible copy of his appeal to the Facility Manager.   (Doc. 1-2 at 24,

25).

On November 17, 2016, Plaintiff filed Grievance No. 654101, challenging deductions

from his inmate account.   (Doc. 1-2 at 17, Official Inmate Grievance).

On November 29, 2016, the Grievance Coordinator rejected Plaintiff's grievance as

untimely, as it had not been submitted within fifteen (15) days after the events upon which

the claims are based.   (Doc. 1-2 at 19, Grievance Rejection).

On December 20, 2016, the Facility Manager upheld the rejection of Grievance No.

654101 as follows:

> I am in receipt of your appeal and have reviewed your original grievance as
> well as the Grievance Coordinator's rejection.   In your appeal you state you
> received a rejection of your second grievance dated 11/29/16. You state you
> never got reimbursed for the $1.00 vending card fee and then another $1.00
> was taken 10/12/16.   You claim you were also charged for copies.   You
> state a total of $5.50 was overdrawn from your account.
>
> I find the Grievance Coordinator properly rejected your grievance due to the
> fact that your original grievance was submitted as untimely.   The dates you
> noted in your initial grievance were 9/19, 9/27 and 10/12/16.   You did not
> submit your grievance until 11/17/16.   This is well beyond 15 working days.
>
> Therefore, I uphold the initial rejection and your appeal, and any requested
> relief is denied.

(Doc. 1-2 at 19, Facility Manager's Appeal Response).   On January 27, 2017, Plaintiff's

Final Appeal was dismissed as untimely, but also determined that Plaintiff's grievance was properly rejected at the facility level.   (Doc. 1-2 at 20, Final Appeal Decision Dismissal).

## IV.   Discussion

### A.   Eleventh Amendment Immunity

It is well settled that suits for damages by individuals against, inter alia, state officers acting in their official capacities are barred by the Eleventh Amendment.   *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); *Chittister v. Dep't of Community and Economic Development*, 226 F.3d 223 (3d Cir. 2000) (holding that individuals are barred from seeking monetary damages from state governments or state agencies).   *See also Bey v. Pennsylvania Department of Corrections*, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

*Id*.; *see also Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161 (3d Cir. 2002).

Thus, Defendants are entitled to judgment as a matter of law as to monetary liability against them in their official capacities.

B. **Personal Involvement**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).   To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."   *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).   "A defendant in a civil

rights action must have personal involvement in the alleged wrongs.... Personal involvement

can be shown through allegations of personal direction or of actual knowledge and

acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362

(1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).   Such allegations, however, must

be made with appropriate particularity in that a complaint must allege the particulars of

conduct, time, place, and person responsible.   *Evancho*, 423 F.3d at 354; Rode, 845 F.2d

at 1207-08.   Alleging a mere hypothesis that an individual defendant had personal

knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish

personal involvement.   *Rode*, 845 F.2d at 1208.

Harvey, himself, admits in his complaint, that the only way any of the Defendants

had knowledge of his alleged claims is through the grievance process. (Doc. 1-2).

Specifically, with respect to Defendant, Doris Weaver, he states that Weaver "handles

inmate accounts at SCI-Camp Hill yet when this Plaintiff grieved the illegal deductions from

his account, she allowed said grievances to be rejected & then labeled frivolous."   (Doc. 1-2

at 6).   Defendant Enck is alleged to have "marked Grievance #644697 frivolous & stated

there was no record of any kind of special diet on file for this Plaintiff."   (Doc. 1-2 at 9).   He

claims, "in response to Grievance #654101, [Defendant] Heist rejected it stating it was not

submitted within 15 working days" and "later on appeal Facility Manager stand-in

Superintendent Laurel Harry signed off, upholding Ms. Heist's ruling." *Id*.   As to Facility

Manager Kathleen Zwierzyna, Plaintiff states that Defendant Zwierzyna "backed [Defendant]

Zobitnee when constitutional violations existed on A-Block and Plaintiff's appeal to her

spoke of them, yet she went with a decision backing co-worker."   (Doc. 1-2 at 7).   Finally,

Harvey claims that "Defendants Dorina Varner and Keri Moore are Chief Grievance Officers

that have the responsibility to oversee the last level of grievance appeals for inmates in the

Department of Corrections."   (Doc. 1-2 at 5).

Plaintiff's complaint fails to establish that the named Defendants were personally

involved in any of Plaintiff's alleged constitutional violations.   Harvey is suing

Superintendent Harry and Deputy Superintendent Zwierzyna because they are purportedly

liable for the actions of their subordinates. (Doc. 1-2 at 4). He alleges that Defendant Harry

is "responsible for the overall operations at SCI-Camp Hill" and Defendant Zwierzyna is

"legally responsible for the overall operations and her responsibility is also to oversee the

grievance process of SCI-Camp Hill."   *Id*.   Harvey's claims plainly seek to hold these

Defendants vicariously liable for the actions of their subordinates. These claims are, in

essence, nothing more than an assertion of respondeat superior liability which seeks to hold

Defendants Harry and Zwierzyna liable based on their supervisory role as Superintendent

and Deputy Superintendent of the facility. This ground of constitutional liability has been

squarely rejected by the courts.   *See Rode*, 845 F.2d at 1207; *see also Ashcroft v. Iqbal*,

556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution.").

To the extent that Harvey attempts to hold all the named Defendants liable based on

their involvement in the grievance procedure, this claim also fails.   Inmates do not have a

constitutional right to prison grievance procedures.   *See Jackson v. Gordon*, 145 F. App'x

774, 777 (3d Cir. 2005) (per curiam) (explaining that "prison inmates do not have a

constitutionally protected right to a grievance process").   The filing of a grievance,

participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to

an inmate's grievance, do not establish the involvement of officials and administrators in any

underlying constitutional deprivation.   *See Rode*, 845 F.2d 1195, 1207 (3d Cir. 1998)

(supervisory liability where a defendant, after being informed of the violation through the

filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is

not enough to show that the defendant has the necessary personal involvement); *Pressley*

*v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (not precedential) ("The District Court

properly dismissed these defendants and any additional defendants who were sued based

on their failure to take corrective action when grievances or investigations were referred to

them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not precedential) (holding

that allegations that prison officials responded inappropriately to inmate's later-filed

grievances do not establish the involvement of those officials and administrators in the

underlying constitutional deprivation).   Thus, Plaintiff's attempt to establish liability against

the named Defendants based upon their denial of a grievance does not support a

constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005)

(involvement in post-incident grievance process not a basis for liability). Consequently,

Defendants are entitled to judgment as a matter of law for lack of personal involvement,

liability based solely on *respondeat superior* and their involvement in the grievance procedure.

### C. Eighth Amendment Health and Safety Claim

Plaintiff claims that the named Defendants were deliberately indifferent to his health and safety by forcing him to be exposed to hazardous conditions in his cell, in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (i) "he has suffered an objectively, sufficiently serious injury," and (ii) "that prison officials inflicted the injury with deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   The first prong of the *Farmer* test is an objective one.   Here, Plaintiff has failed to allege that he suffered any type of injury from the alleged dangerous conditions of his cell.

The lack of a ladder and railing on a top bunk cannot be the basis for an Eighth Amendment claim because it is not objectively serious, *Mikell v. Harry*, 2018 WL 501000, at *5 (M.D. Pa. Jan. 22, 2018) (collecting cases), nor is it objectively dangerous. Further, it is hard to imagine how the lack of a second stool would present a risk of any injury that could threaten Harvey's safety.   Thus, these conditions do not state an Eighth Amendment violation.

While Harvey complains about spiders and other pests in his cell, he does not allege, nor does the record support, how this put him at risk of serious harm.   Our Court has previously found that these types of conditions do not rise to the level of an Eighth

Amendment claim without the attendant risk of harm.   *See Mitchell v. Dodrill*, 696

F.Supp.2d 454, 467 (M.D. Pa. 2010); *Hill v. Smith*, 2005 WL 2666597, at *7 (M.D. Pa. Oct.

19, 2005).   Put simply, Harvey is claiming that the pests only caused discomfort and not

actual potential injury.   As the Constitution does not mandate comfortable prisons, *Farmer*,

511 U.S. at 834, the lack of a risk of serious harm affords Defendants judgment as a matter

of law.

### D. Eighth Amendment Medical

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a

serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate

indifference to that need."   *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582

(3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).   A serious

medical need is "one that has been diagnosed by a physician as requiring treatment or one

that is so obvious that a lay person would recognize the necessity for a doctor's attention."

*Monmouth Cty. Corn Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).   In

addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or

delay in the provision of adequate medical care, the medical need is of the serious nature

contemplated by the eighth amendment."   *Id*. (citation omitted).   A prison official acts with

deliberate indifference to an inmate's serious medical needs when he "knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."   *Farmer*, 511 U.S. at 837.   A mere difference of

opinion between the prison's medical staff and the inmate regarding the diagnosis or

treatment which the inmate receives does not support a claim of cruel and unusual

punishment.   *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see also*

*McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113

(10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).

Initially, the Court notes that Plaintiff fails to establish a viable Eighth Amendment

medical claim against any of the named Defendants.

For purposes of Eighth Amendment medical claims, non-medical staff may not be

"considered deliberately indifferent simply because they failed to respond directly to the

medical complaints of a prisoner who was already being treated by the prison doctor."

*Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).   The rationale for this rule has been

aptly explained by the United States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts ..., a non-medical prison
> official will generally be justified in believing that the prisoner is in capable
> hands.   This follows naturally from the division of labor within a prison. Inmate
> health and safety is promoted by dividing responsibility for various aspects of
> inmate life among guards, administrators, physicians, and so on.   Holding a
> non-medical prison official liable in a case where a prisoner was under a
> physician's care would strain this division of labor.   Moreover, under such a
> regime, non-medical officials could even have a perverse incentive not to
> delegate treatment responsibility to the very physicians most likely to be able
> to help prisoners, for fear of vicarious liability.   Accordingly, we conclude that,
> absent a reason to believe (or actual knowledge) that prison doctors or their
> assistants are mistreating (or not treating) a prisoner, a non-medical prison
> official ... will not be chargeable with the Eighth Amendment scienter
> requirement of deliberate indifference.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).   Courts have repeatedly held that, absent

some reason to believe that prison medical staff are mistreating prisoners, non-medical

corrections staff who refer inmate medical complaints to physicians may not be held

personally liable for medically based Eighth Amendment claims.   *See, e.g.*, *id*. at 236-37

(citing *Durmer*, 991 F.2d at 69); *Garvey v. Martinez*, No. 08-2217, 2010 WL 569852, at *6-7

(M.D. Pa. 2010); *Hodge v. United States*, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa.

2007).

   To the extent that Plaintiff's medical claims include the failure to discuss lab results,

such is not a "serious" medical condition "that a failure to treat can be expected to lead to

substantial and unnecessary suffering, injury, or death."   *Tsakonas v. Cicchi*, 308 Fed.

Appx. 628, 632 (3d Cir. 2009) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023

(3d Cir.1991)).   There is nothing in the record, and Harvey does not allege, that any named

Defendants failed to treat him for anything that may have been found in the lab work results.

   Moreover, none of the named Defendants are trained members of the medical staff

subject to liability for an Eighth Amendment claim.   Plaintiff has not presented any evidence

that these Defendants provided him with medical care, or that any of these Defendants were

aware that prison doctors or their assistants were not providing an appropriate level of care

in response to his medical needs.   Nor has Plaintiff presented any evidence that these

Defendants were aware of or acquiesced in purported Eighth Amendment medical care

violations.   Again, because Plaintiff was under the care of medical experts, the non-medical

Defendants were justified in believing that he was in capable hands.   *See Spruill*, 372 F.3d

at 236; *Durmer*, 991 F.2d at 69.   Thus, Defendants are entitled to judgment as a matter of law.

Further, with respect to Plaintiff's claim that his therapeutic diet for G6PD chromosome deficiency was not followed, the record reveals that an individual with this particular deficiency must avoid fava beans and that the Department of Corrections does not serve fava beans to inmates.   Plaintiff does not refute this.   Thus, there is nothing in the record to suggest that the named Defendants were aware that Plaintiff was G6PD chromosome deficient and were deliberately indifferent to this deficiency.

Finally, to the extent that Plaintiff claims that "ventilation in the prison's respective A-Block housing unit is poor to non-existent" and "during humid summer months Plaintiff suffers from nose bleeds and due to the lack of ventilation inside A-Block [he] found it hard to breath even using his asthma inhaler," there is no support in the record that any of the named Defendants failed to provide Harvey with his inhaler, a medical visit or medical treatment regarding his alleged claim of breathing difficulties.   Thus, Plaintiff cannot state an Eighth Amendment claim and Defendants are entitled to judgment as a matter of law.

### E. Fourteenth Amendment – Procedural Due Process Clause

The Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   "Thus, to establish a claim under the Due Process Clause, a plaintiff must show that he had a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional

requirements." *Ray v. Rogers*, 2014 WL 1235905, *3 (W.D. Pa. 2014) (citing *Shoats v.*

*Horn,* 213 F.3d 140, 143 (3d Cir. 2000)).   "[A]n unauthorized intentional deprivation" of an

inmate's property by prison officials "does not constitute a violation of the procedural

requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

postdeprivation remedy for the loss is available."   *Hudson v. Palmer*, 468 U.S. 517, 533

(1984). The United States Court of Appeals for the Third Circuit has consistently held that

the availability of the prison's grievance procedure is a meaningful postdeprivation remedy.

*See, e.g., Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000) (the prison's

grievance program, which allowed prisoners to complain about any matter that is unjust and

provided for direct appeal to the warden, was an adequate postdeprivation remedy); *Petko*

*v. Radle*, 593 Fed. App'x. 94, 96 (3d Cir. 2014) ("[The plaintiff] received due process

because he had access to and took advantage of an adequate postdeprivation remedy –

the Pennsylvania D.O.C.'s grievance procedure."); *Crosby v. Piazza*, 665 Fed. App'x. 168,

172 (3d Cir. 2012) ("Adequate remedies were available here as [the plaintiff] was provided

an opportunity to file an administrative grievance.").

Because Plaintiff alleges in his complaint, and attached exhibits, that he had access

to and took advantage of the prison grievance system regarding the alleged inappropriate

withdrawals from his prison account, Plaintiff cannot state a claim under the Procedural Due

Process Clause of the Fourteenth Amendment against any of the named Defendants

allegedly involved in this incident.

Furthermore, the United States Court of Appeals for the Third Circuit has specifically held that the deduction of $5.00 per day from an inmate's account as a medical co-pay does not violate the Due Process Clause of the Fourteenth Amendment where, as here, the inmate had access to the prison grievance system. *Dockery v. Beard*, 509 Fed. App'x. 107, 114 (3d Cir. 2013). The exhibits attached to Plaintiff's complaint clearly demonstrate that Plaintiff has filed several grievances in this case relating to a variety of issues, including grievances about unauthorized deductions and excessive co-pays for sick call visits. Therefore, because Plaintiff had access to the prison grievance system regarding the alleged unauthorized deductions and co-pays, Plaintiff had access to a meaningful post-deprivation remedy, and consequently, his claims against the named Defendants fail as a matter of law.

## V.   Conclusion

Based on the foregoing discussion, Defendants' unopposed motion for summary judgment will be granted.   A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September _26_, 2021